GEORGE E. TAYLOR, Appellant, v. C. W. WILDMAN, Appellee.

Evidence: CROSS-EXAMINATION OF WITNESSES. The scope of the cross-examination of a witness is largely a matter of discretion, and the court's ruling will not be disturbed on appeal, in the absence of prejudice. Thus overruling the objection to the mere inquiry as to whether the witness ever heard anything said on a certain subject, objected to as improper · cross-examination, was without prejudice; and when a question objected to on that ground was not answered, though the objection was overruled, and on other grounds the party moved to strike the answer elicited by the court, no error appeared. In the instant case the direct examination was broad, and no abuse of discretion in the cross-examination is shown.

Instructions: ASSUMPTION OF FACTS. In an action upon a contract for the recovery of a broker's commission, in which evidence was admitted tending to establish a contract different from that alleged in the petition, an instruction that there was no issue as to any other contract and it was wholly immaterial as to what other contract was made, except as it may be material in determining whether the contract relied upon was made, was not objectionable as assuming the making of a contract other than the one pleaded and relied upon.

*Appeal from Jasper District Court.*—HON. JOHN F.
TALBOTT, Judge.

MONDAY, FEBRUARY 23, 1914.

ACTION to recover one-half the commission earned by
plaintiff and defendant as real estate brokers. The defendant
filed a general denial, and on issues tendered the case was
tried to a jury, resulting in a verdict and judgment for de-
fendant, and plaintiff appeals.—*Affirmed.*

*Bray, Shifflett & Lake,* for appellant.

*McElroy & Cross,* for appellee.

DEEMER, J.—But two points are relied upon for a re-
versal; one the cross-examination of a witness for plaintiff,
and the other an instruction given by the trial court. Plain-
tiff is a farmer living near Lynnville, in Jasper county, and
defendant is a newspaper editor, residing at the same place.
Before the transactions in controversy arose, each was doing
some real estate business. Together they went with what is
known as the Porter Land Company to Canada, and it is
claimed that while there an officer of the land company sug-
gested they would make a good team to sell Canada land, and
that it was then agreed that they would go into the business
together, share the profits from sales which either might make
for the company, their commission to be $1 per acre for all
land sold.

According to plaintiff's version, they together traveled
about their home county, trying to find buyers, but without
success, and that the plaintiff finally purchased six hundred
and forty acres of Canada land from the land company; that
defendant collected the commission for the sale, $640, and
refused to share it with the plaintiff. Plaintiff also testified
that defendant admitted having received and spent the money,

and that he conditionally agreed to pay the plaintiff his share thereof. Defendant denied the agreement to divide the commission, and claimed that he alone had the contract with the land company; that he, in fact, negotiated the sale to plaintiff, and was entitled to the whole of the commission from the land company. He admitted that he was to give plaintiff 50 cents an acre for every acre of land sold by him (plaintiff) or upon any purchases which he might influence others to make, but specifically denied that this agreement covered any land which plaintiff might himself buy.

I. In support of his claim, plaintiff produced a witness who testified in chief as follows:

I know the plaintiff and defendant in this case, and was acquainted with them in the year 1909. Mr. Wildman and Mr. Taylor were engaged in the real estate business in the fall of 1910. I saw Mr. Taylor and Mr. Wildman together during the fall of 1909, 1910, and 1911. I saw them driving out into the country together. They would be riding in a buggy with a couple of black ponies. I had seen Mr. Taylor driving them before. I saw Mr. Taylor and Mr. Wildman driving together north, south, and sometimes east of Lynnville. I have seen them going in different directions. I noticed them together that way more after the month of September, 1909. After September, 1909, I saw them together in the manner I have described some weeks once, some weeks twice, and sometimes oftener. They were competitors of mine, and, of course, they kept their business away from me. I do know that they were soliciting men to go to Canada to buy land, during and after September, 1909.

1. EVIDENCE: cross-examination of witnesses.

The following record was then made upon cross-examination:

I first saw these men together in Lynnville the latter part of September. The first time I saw them they were standing on the street and Charlie was talking Canada land to Taylor. Q. Did you hear him say anything concerning Mr. Taylor going to Canada to look at land? (Objected to as not proper

cross-examination, incompetent, irrelevant, and immaterial. Overruled, and plaintiff excepts.) A. Yes. Q. What did Mr. Wildman say to Mr. Taylor about their going up to buy land in that conversation? (Objected to as not proper cross-examination, irrelevant, incompetent, and immaterial. Overruled, and plaintiff excepts.) By the Court: State anything he said about Taylor's buying land. (Plaintiff excepts.) A. Mr. Wildman, as I told you, was talking about Canada. Mr. Wildman had called a man there and said that there would be a man in town in a few days to talk the matter over. There was also another party there that I was watching that they were talking to. I was kind of interested in the other party. (Plaintiff moves to strike out the answer as incompetent, irrelevant, and immaterial. Overruled, and plaintiff excepts.) Q. What were the words Mr. Wildman used in speaking of the subject to Mr. Taylor? A. Mr. Wildman said he was interested in Canada land and was talking to Taylor about it. What he said I don't remember exactly. (Plaintiff moves to strike out the answer as incompetent, irrelevant, and immaterial. Overruled, and plaintiff excepts.) They were talking something about tickets and arrangements to go, and in a general way Taylor said he would go. There was nothing said about Taylor buying land. (Plaintiff now moves the court to strike out all the testimony of the witness as to conversation between the parties as incompetent; irrelevant, and immaterial. Overruled, and plaintiff excepts.)

On redirect examination, the witness testified: "I cannot remember definitely any conversation that I heard between the two men at the time referred to."

But two of these questions were objected to as not cross-examination, and one of them simply asked the witness as to whether he heard anything said about a certain subject. The objection was properly overruled as to that question. The other question which was objected to as not cross-examination was not really answered, although the objection was overruled. In fact the court put the question which was answered, and plaintiff's motion to strike was not upon the ground that it was improper cross-examination. So much for the record, which we think does not sustain plaintiff's contention of error.

Aside from this, a large discretion is vested in the trial court as to the extent to which cross-examination may be carried, and there was no abuse of that discretion here. The witnesses' answers in chief were quite broad, and opened up rather a large field.

II. The instruction of which complaint is made, reads as follows:

You are instructed that plaintiff's cause of action is founded upon a contract set out and alleged in his petition, and that he cannot recover unless he has satisfied you that the contract relied upon was, in fact, made substantially as alleged. Evidence of defendant has been introduced and allowed by the court, tending to show that some other contract was made between plaintiff and defendant relative to the sale of Canada land, and this evidence, as well as the evidence of the plaintiff, and all other evidence in the case bearing upon the question, may be considered by you, in determining whether or not the contract set out and relied upon by plaintiff was in fact made. There is no issue as to any other contract, and it is wholly immaterial *as to what other contract was made,* except as it may be of assistance to you in determining whether or not the contract set out and relied upon by plaintiff was made.

The criticism made of it is that, by the use of the words italicized, the court assumed the making of another contract between the parties than the one pleaded and relied upon by the plaintiff. We do not so read the instruc-

2. Instructions: assumption of facts.

tion. Taken as a whole, it assumes nothing, but, in effect, says that, no matter what contract the parties may have made, it was wholly immaterial, unless it was of some assistance in determining whether or not the one claimed by plaintiff was made. In an earlier part of the instruction, the jury's attention was properly directed to the testimony offered upon a given point, and left to determine from this and all the other testimony, as to whether or not the contract claimed by plaintiff was in fact made. We see no error here of which the plaintiff may justly complain.

Finding no prejudicial error in the record, the judgment must be, and it is, *Affirmed.*

LADD, C. J., and GAYNOR and WITHROW, JJ., concurring.